UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARYN M. ROBBINS,

        Plaintiff,

v.

INTERNATIONAL BROTHERHOOD OF
TEAMSTERS AND CENTRAL STATES
SOUTHEAST AND SOUTHWEST PENSION
FUND,

        Defendants.
_____/

Case No. 1:05-cv-681

Hon. Wendell A. Miles

OPINION AND ORDER

Plaintiff, Sharyn M. Robbins (Plaintiff), filed this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. Presently before the Court is Defendant Central States Southeast and Southwest Pension Fund's Motion for Judgment on the Pleadings (docket #17). A hearing on the motion was held June 19, 2006. For the following reasons, the Court grants the motion.

Background

Richard C. Robbins was employed by Yerington Construction Company, Inc. (Yerington) as a driver from 1968 to 1975, 1977 to 1980, and 1980 to 1984 (Administrative Record, docket #19, Ex. C, p. 40) and was a member of the Teamsters union. Mr. Robbins last worked for Yerington between August 1988 and July 1993, at which time Mr. Robbins found other employment when Yerington filed for bankruptcy protection. Defendant Central States Southeast and Southwest Pension Fund (Central States) is a multi-employer Taft-Hartley

Benefits Fund that at all relevant times managed a Teamster pension plan. During each of Mr. Robbins' four terms of employment, Yerington made regular contributions to the Teamster's pension fund on behalf of Mr. Robbins. The pension benefits paid to Mr. Robbins prior to his death on August 29, 2004, and the beneficiary pension benefits paid to his widow after his death, have not included any amounts attributable to his employment between August 1988 and July 1993.

At all times during Mr. Robbins' employment with Yerington, the Teamsters, through its Local Union Number 7 (Local 7), was the exclusive representative of the driver/operator employees of Yerington. A collective bargaining agreement was entered into between Yerington and the "International Brotherhood of Teamsters, Local No. 7, its members, and the employees represented, hereinafter designated the 'Union' . . . . " (AR, Ex. C., p. 18). The collective bargaining agreement provided in the Recognition Clause:

> The Employer recognizes the Union as the exclusive representative of driver/operator employees of the Employer classified and working at its various sites, for the purpose of collective bargaining with respect to rates of pay, wages, hours or employment and other working conditions.
>
> Supervisors . . . Management employees and all other employees and classifications are excluded from this recognition. (Id., Article I).

The agreement set the hourly pay rate for drivers/operators, but for no other job classifications. (Ex. C, p. 19). In July 1992, Yerington and Local 7 entered into a "Letter of Agreement," which included among other items that "Richard Robbins shall be maintained at his current hourly rate of $13.29 per hour." (Ex. C, p. 21). Under the Teamsters' collective bargaining agreement, drivers/operators were paid $9.575 per hour. (Ex. C, p. 19).

Central States conducted an audit of Yerington for the period December 28, 1986 to December 26, 1992, which was completed on or about January 28, 1994. (Ex. C, audit report, pp. 41-43). The audit was conducted pursuant to a referral from Local 7 due to potential non-reporting. (Ex. C, p. 42). The auditor concluded that Mr. Robbins was classified and paid as a mechanic from August 1988 through July 1993, and therefore, not covered by the collective bargaining agreement. The auditor's notes state that Yerington:

> represented that mechanics were not covered and Mr. Robbins was reported because it was a special situation. [Yerington] said that Mr. Robbins used to be a reported driver for Yerington who left for a short time and then was rehired as a mechanic in August of 1988. Mr. Robbins wanted to continue his Teamster benefits so [Yerington] and Local 7 agreed to let Mr. Robbins be a Teamster, and [Yerington] reported him to [Central State] accordingly. (Ex. C, p. 45, §(3)).

The auditors also obtained a list, date-stamped February 23, 1993, which was a response to the following inquiry: "Bob Iman is up-dating his seniority list and requests the following information." Mr. Robbins was listed as a mechanic with a hire date of August 1, 1988, and a pay rate of $13.29. (Ex. C, p. 49). It is not clear who prepared the list, or who requested the information. The auditors reviewed the operating engineers' collective bargaining agreement which showed that pit mechanics and pit maintenance received $13.29 per hour. (Ex. C, p. 46). Although Yerington employed several mechanics during the relevant period, it made contributions to the fund only on behalf of Mr. Robbins.

Mr. Robbins applied for retirement benefits in March 1998 (Ex. C, p. 39). By letter dated April 23, 1998, Central States notified Mr. Robbins that it could not give him credit for the August 1998 through July 1993 period because he was a mechanic not covered by the collective bargaining agreement, and the payments made to the fund by Yerington on his behalf were not

3

proper. (Ex. C, p. 37).  Mr. Robbins applied again for retirement pension benefits in February 2001, (Ex. C, p. 30), and was again denied for the same reason. (Ex. C, p. 28).  Mr. Robbins appealed, stating that he had been employed as a driver.  "If a truck would happen to break down I would fix it if time allowed, otherwise I drove all the time."  (Ex. C, p. 26).  He also advised that between August 1988 and July 1993, he had been a dues paying member of Local 7, and served as committee representative and union steward, (Ex. C, p. 26, p. 11, p. 3), which was confirmed by Local 7 president Tom Hardy, who opined that Mr. Robbins was covered by the collective bargaining agreement. (Ex. C., p. 30).  Mr. Robbins argued that "I . . . was never told I wasn't a member of the Collective Bargaining Agreement.  I was part of the negotiating committee when it was up for negotiation.  If I wasn't covered by the Collective Bargaining Agreement why would I take the time to be a part of the committee?"  (Ex. C, p. 26).  In September 2001, five of Mr. Robbins co-workers during the relevant time submitted a letter to Central State stating that they "hereby verify that Mr. Robbins was employed in the capacity of truck driver, equipment operator and mechanic." (Ex. C, p. 12). When the appeal was denied, Mr. Robbins appealed to the Board of Trustees.

The Board of Trustees denied the appeal on May 15, 2002.  Mr. Robbins widow, Sharyn Robbins, commenced this ERISA action in the Van Buren Circuit Court in August 2005, seeking review of the administrative denial of benefits. Defendants timely removed the action to this Court.[1]

---

[1] By stipulation of the parties, Local 7 was dismissed from this suit on December 13, 2005 (docket #23).  On November 30, 2005, state-law counts 2 and 3, of the 3-count complaint, were dismissed (docket #21).  This leaves only the ERISA claim, count I, against Central States pending.

Standard of Review

The trust agreement governing this pension fund provides that the trustees are vested with discretionary and final authority to construe the plan documents and to make decisions on claims for benefits by participants and beneficiaries. Where an ERISA plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court must apply the arbitrary and capricious standard of review. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 110-12, 109 S. Ct. 948 (1989). Plaintiff agrees that the arbitrary and capricious standard is applicable in this case. The arbitrary and capricious standard is the "least demanding form of judicial review of administrative action." McDonald v. Western-Southern Life Ins. Co., 347 F. 3d 161, 169 (6th Cir. 2003). Under the arbitrary and capricious standard, the court determines whether a defendant's decision to deny a plaintiff benefits was rational and consistent with the terms of the plan. Miller v. Metro Life Ins. Co., 925 F. 2d 979, 984 (6th Cir. 1991). If there is a reasonable explanation for the administrator's decision to deny benefits in light of the plan's provisions, then the decision is not arbitrary and capricious. Williams v. Int'l Paper Co., 227 F. 3d 706, 712 (6th Cir. 2000); Perry v. United Food and Commercial Workers Dist. Union 405 and 442, 64 F. 3d 238, 242 (6th Cir. 1995); Davis v. Ky. Fin.. Cos. Ret. Plan, 887 F. 2d 689, 693 (6th Cir. 1989). The court's review is limited solely to the administrative record. Wilkins v. Baptist Healthcare Systems, Inc., 150 F. 3d 609, 619 (6th Cir. 1998).

Discussion

Local 7 permitted Mr. Robbins to be an active, dues-paying member of the union. In turn, Yerington agreed to make contributions to Central States' pension plan on behalf of Mr. Robbins. The Trust Agreement which governed administration of the pension plan defined an employee covered by the plan as:

> A person who is employed under the terms and conditions of a collective bargaining agreement entered into between an Employer as herein defined and a Union as herein defined, and on whose behalf payments are required by such collective bargaining agreement or applicable law to be made to the Fund by the Employer. (Ex. A, Art. I , § 3(a)).

Under Central States' pension plan:

> A participant shall earn Contributory Service for any employment with a contributing Employer required to make Employer Contributions on his behalf according to a Collective Bargaining Agreement. (Ex. B, § 1.09, p. 6-7).

However, under the recognition clause of the collective bargaining agreement between Yerington and Local 7, the agreement covered only drivers/operators.

In making its decision that Mr. Robbins was employed by Yerington as a mechanic from August 1988 and July 1993, and therefore, not properly a plan participant during that period, the Board of Trustees reviewed payroll records and the seniority list. It considered that under their respective collective bargaining agreements, the hourly pay rate for drivers was $9.57 while the hourly pay rate for mechanics was $13.29 per hour, which was Mr. Robbins' pay rate. The board also considered Yerington's statement to the auditors that Mr. Robbins was hired as a mechanic and was not covered by the Teamsters' collective bargaining agreement, but was reported to Central States because he was a "special situation." The Board noted that no other

6

employees classified as mechanics were reported to Central States. (Ex. C, pp. 1-5).

The Board mentioned, but did not discuss, Mr. Robbins' statement that he was primarily a driver and only did mechanic work if needed and time permitted.  Whether or not the Court would have given Mr. Robbins' description of his job more weight is immaterial.  The essence of arbitrary and capricious review is to determine if the decision was supportable given the evidence, not whether the Court agrees with the importance given to various pieces of evidence or the decision itself.  Brown v. Nat'l City Corp., 974 F. Supp. 1037, 1042 (W.D. Ky. 1997), aff'd 166 F.3d 1213 (6th Cir. 1998).  The evidence cited by the Board was sufficient to support it's decision that Mr. Robbins was employed as a mechanic.

It is undisputed that during the relevant time period Mr. Robbins was told by Yerington and Local 7 that he was entitled to participate in the plan by virtue of his membership in Local 7.  Plaintiff argues that Mr. Robbins reasonably relied upon these assurances.  Thus, the Trustee's decision to deny him benefits was both unreasonable and unconscionable.

Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement *shall*, to the extent not inconsistent with law, *make such contributions in accordance with the terms and conditions of such plan or such agreement.*

29 U.S.C. § 1145 (emphasis added).  Section 515 binds the parties to a collective bargaining agreement to the terms of the agreement regardless of their undisclosed intent or understandings.  Central States Pension Fund v. Behnke, 883 F.2d 454 , 463 (6th Cir. 1989) (where plan had never been apprised of agreement between employer and the union, it was entitled to assume that employer was following the stated terms of the written plan); Bakery & Confectionery Union v.

7

New World Pasta, 309 F.Supp.2d 716, 723-24 (D.Md. 2004) (citing Bakery & Confectionery Union v. Ralph's Grocery Store, 118 F.3d 1018, 1021 (4th Cir. 1997)).  In addition, ERISA imposes a fiduciary duty on plan administrators to discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent [with ERISA]." 29 U.S.C. § 1104(a)(1)(D).  Thus, under ERISA, undisclosed "side agreements" that deviate from the terms and conditions of a plan or collective bargaining agreement are not binding upon the trustees of the plan.  Central States, SE & SW Areas v. Transport, Inc., 183 F.3d 623 (7th Cir. 1999) (finding that under ERISA the employer was bound by the terms of the collective bargaining agreement, despite a second agreement between the employer and the union altering the terms of the collective bargaining agreement); McGowan v. NJR Service Corp., 423 F.3d 241, 245-46 (3rd Cir. 2005) (explaining that the statute dictates that the rights of the parties are governed by the documents on file with the Plan, and not by outside private agreements between beneficiaries and participants).  No matter how well-meaning their motivation, Yerington and Local 7 could not bind the Defendant pension fund to treat Mr. Robbins as a "special case" and permit him to be covered by the collective bargaining agreement when he would not otherwise qualify under the terms of the plan.  See Egelhoff v Egelhoff ex rel. Breiner, 532 U.S. 141, 147 (2001) (noting the statutory command of § 1104(a)(1)(D) that an ERISA fiduciary must  administer the plan "in accordance with the documents and instruments governing the plan."

    Having sufficient evidence to find that Mr. Robbins was employed by Yerington during the relevant time period as a mechanic, the decision of the Defendant's Trustees to deny benefits was consistent with the terms of the pension plan.  Accordingly, the Court finds that the decision

was not arbitrary and capricious.

## Conclusion

For the foregoing reasons, the Court GRANTS Defendant Central States Southeast and Southwest Pension Fund's Motion for Judgment on the Pleadings (docket #17).

So ordered this 23rd day of June, 2006.

/s/ Wendell A. Miles<br>Wendell A. Miles<br>Senior U.S. District Judge